[Philadelphia, February 4, 1833.]

## BAUER and Others *against* ROTH and Another.

### IN ERROR.

Where judgment is given in favour of the plaintiff on a demurrer to a plea in bar, it should be a judgment *quod recuperet*, and not *quod respondeat ouster;* but if judgment *quod respondeat ouster* be given, it is an error of which the defendant cannot complain, for it is in his favour.

To an action founded on a bond of indemnity *nil debet* is no plea.

It is no cause of demurrer to a special plea, that the facts set forth in it, may be given in evidence under the general issue.

In an action on a bond of indemnity by two obligees, a plea, stating in substance that the defendant, with others (originally bound with him) agreed to join in the execution of the bond to one of the plaintiffs alone to indemnify him, &c. and positively refused to be bound to the other plaintiff in any manner or form whatever to indemnify him, &c. either severally, or jointly and severally with his co-plaintiff, and that neither of the obligors being able to read the English language in which it was drawn up, they all signed it upon trust, and delivered it to the plaintiff to whom they agreed to become bound, without having heard it read or explained or interpreted, and without having requested that it should be, believing that it was written in exact conformity to their previous agreement, but not stating how or why the deviation from their agreement happened, whether by fraud of the plaintiffs or mistake of the scrivener, is not sufficient to bar the plaintiffs' action.

It is no plea against the further maintainance of an action, that one of the plaintiffs, since its institution, has applied for and obtained a discharge under the insolvent laws, and that his trustees have not given the security required by law.

A mere irregularity in point of time, in putting in a plea *puis darrein continuance*, is no cause of demurrer to the plea, whatever it might have been for setting it aside on motion; but the power to set it aside may be questioned since the act of 21st *March*, 1806.

*Query*, whether in *Pennsylvania*, a plea *puis'darrein continuance* is a waver of a previous plea in bar.

The obligors in a bond reciting that the obligees, together with *M.* are bound in seven obligations to the heirs of *C. R.* to be paid by the said *M.* and conditioned that he shall pay them on the days and times mentioned therein, and also to keep harmless and indemnify the obligors from all suits, payments, costs and charges in behalf of the recited obligations, are responsible for the default of the principal debtor in those obligations, though they may have passed into the hands of assignees.

There is no error in instructing the jury in reference to the defendant's liability on such a bond of indemnity, that " the plaintiffs' claim for damages does not rest on the ground of injury done them by reason of their liabilities as sureties for *M.* and on the neglect of *M.* to pay the heirs of *C. R.*    The measure of damages is the amount of injury actually sustained."

Nor is there error in charging the jury, that in strictness of law they might give the plaintiffs the full amount due in each of the actions on the recited obligations, mentioned in the breaches assigned in the declaration in the suit on the bond of indemnity, at the commencement of that suit, recommending to them however, if they should find for the plaintiffs, to regulate the amount of the damages by the amount of moneys actually paid out by the plaintiffs, with interest from the time of such payments; the jury having adopted the recommendation and found a verdict accordingly.

From the record returned on a writ of error to the Court of Common Pleas of *Northampton* County, it appeared, that to *April* Term 1821, of that court, *Peter Roth* and *John Roth* brought an action of

debt on bond against *Jacob Bauer, George Keim* and *Jacob Miller,* the plaintiffs in error. The original writ, which was a summons, was served on *Bauer* and *Miller,* but not on *Keim.* The plaintiffs' attorney filed a declaration, in which he set forth the bond and the condition at large. The condition was as follows:

" Whereas *David Musselman,* by seven certain obligations bearing even date herewith, together with the said *Peter Roth* and *John Roth* standeth bound unto the heirs of the said *Conrad Roth* in the above sum of three thousand nine hundred and sixty-two dollars and sixty-nine cents, current money of *Pennsylvania,* aforesaid, to be paid by seven instalments, which said money is to be paid by the said *David Musselman,* his heirs, executors and administrators. Now the condition of the above obligation is such, that if the said *David Mussleman* shall pay, or cause to be paid, the said above mentioned debt or sum of three thousand nine hundred and sixty-two dollars and sixty-nine cents, on the days and times mentioned in the said several obligations to the said heirs of the said *Conrad Roth* deceased, and if the said *Jacob Bauer, George Keim* and *Jacob Miller,* their heirs, executors and administrators shall from time to time, and at all times hereafter, keep harmless and indemnify the said *Peter Roth* and *John Roth,* their heirs and assigns, their goods and chattels, lands and tenements, of and from all suits, payments, costs and charges of and in behalf of the said above recited obligations, to the heirs aforesaid, without any fraud or further delay, then," &c.

Several breaches of the condition were also set forth in the declaration by averring the non-payment by *David Musselman,* of several of the sums of money specified in the condition of the obligation given to the heirs of *Conrad Roth,* according to the tenor thereof, and that the plaintiffs had actually been compelled by suit to pay certain sums, which are mentioned, besides being sued for certain other large sums, which still remained unpaid. To this declaration, *Bauer* and *Miller,* by their attorney, pleaded covenants performed, with leave to give the special matter in evidence, upon which issue was taken.

Some years afterwards, *Jacob Bauer,* one of the defendants below, having in the meantime died, *Jacob Miller* the other defendant, added the plea of *non est factum,* and *nil debet,* and a special plea in the following terms: " That he ought not to be charged with the said debt, by virtue of the said supposed writing obligatory, because he says, that before and at the time of the making of the said supposed writing obligatory, the said *Jacob Bauer, George Keim* and *Jacob Miller,* consented and agreed to become bound to the said *Peter Roth,* to indemnify the said *Peter,* but protested against and expressly refused to become bound to the said *John Roth,* or to the said *Peter* and *John* conjunctively, under condition to indemnify the said *John,* or the said *Peter* and *John,* or under other condition, or otherwise to become bound to the said *John,* or to the said *Peter* and *John,* as in the said supposed writing obligatory by the said *Peter* and *John* in the court here shewn is contained; and the said *Jacob Miller,* who survived and further saith, that at the time of the making of the said

supposed writing obligatory by the said *Peter Roth* and *John Roth* in court here shewn, they, the said *Jacob Bauer, George Keim* and *Jacob Miller*, were unlettered men, not understanding the English language, and believing the said supposed writing obligatory was written according to the form and effect of the said agreement and understanding of them, the said *Jacob Bauer, George Keim* and *Jacob Miller*, and not otherwise, and not in favour of the said *John*, conjointly with the said *Peter*, contrary to the refusal and denial aforesaid, of them the said *Jacob Bauer, George Keim* and *Jacob Miller*, to become bound to the said *John*, or to the said *Peter* and *John*, and believing that the name of the said *John*, was no where contained in the said supposed writing obligatory as a party, and obligee in the same ; he the said *Jacob Miller*, who survived, &c. says, he then and there sealed the said supposed writing obligatory, and delivered the same to the said *Peter Roth*, as his deed, and not to the said *John Roth*, nor to the said *Peter* and *John*, and so the said *Jacob Miller*, who survived &c. says, that the said supposed writing obligatory by the said *Peter* and *John* in court here shewn, purporting that the said *Jacob Bauer, George Keim* and *Jacob Miller*, granted themselves to be held, and firmly bound unto the said *Peter* and *John* in form aforesaid, is not the deed of him, the said *Jacob Miller*, and of this he puts himself upon the country."

Issue was taken by the plaintiffs below upon the first of these last three pleas; a general demurrer was entered to the second, and a special demurrer to the third, for which the following causes were assigned, *viz* :   "That the matters contained in the said third plea, if true, amount to the general issue and are properly admissible in evidence under the general issue which has been therein first before pleaded by the said *Jacob*, and cannot be pleaded specially ; and that the said third plea, is in other respects uncertain, informal and insufficient."   The defendant below joined in demurrer.

At the same time, another plea against the *further maintainance* of this action by the plaintiffs below was put in by *Miller*, stating that *Peter Roth*, one of the plaintiffs below, since the commencement of the action, and during its pendency, in the year 1824, had applied for and obtained a discharge under the insolvent laws of this state, after executing a deed of assignment of all his property, real, personal and mixed, to a certain *Daniel Steckel* in trust for the use and benefit of his creditors, according to the requisitions of the insolvent laws, but that the said *Daniel Steckel*, has never given the security thereby required, to enable him to act in discharge of the trust, but has refused and still refuses to give the same.   The plea concludes with praying, " judgment if the said *John Roth* and *Peter Roth*, ought further to have and maintain their said action thereof against him," &c.

The plaintiffs below also demurred specially to this plea, assigning for cause, that if true it was not pleaded *puis darrein continuance*, as it ought to have been, if sufficient in law, &c.—The defendant joined in demurrer.

(Bauer and others *v.* Roth and another.)

The court below entered judgment on each of the demurrers against the defendant below, *quod respondeat ouster*, which formed the subject of the first of three errors assigned in this court.

On the trial of the cause in the court below, *Mathias Gross*, one of the subscribing witnesses to the bond declared on, was called by the plaintiffs below to prove its execution. On his cross examination by the defendant's counsel, he testified as follows:—I recollect that *Jacob Bauer* said, he only would be security for *Peter Roth*. It strikes me something was said about it; I was examined before in this case, but cannot recollect properly. I think that *John Roth* went for *Schlabach*, as his security, but I am not certain that he brought him. The bond was read to them; I recollect the expression that *Bauer* made; he said, ' thunder would fetch it, for we, our children and grandchildren are bound;' in the German language. He signed it; it was read before he signed it. I cannot say whether *Bauer* can speak English or not; I never heard him. I was well acquainted with him; saw him very often; cannot say whether *Miller* could speak English or not; all the conversation we have had was in German. I cannot recollect whether the bond was translated into German or not. I cannot say whether *Bauer* or *Miller* could read English or not. I must have read it before it was signed, else he would not have used these expressions. It is my custom to read bonds, especially such bonds as these here. I did a good deal of business as a scrivener at that time. This is the bond (what bond he referred to did not appear) that *Schlabach* and *John Roth* signed. *John Roth* got part of the land, and *Bauer* would not be security for that part; he got *Schlabach*. I certainly made known that they were bound to *John* and *Peter*, as executors, according to the bond for the part that *Musselman* was owing. The writings were all finished in *Bauer's* house. They employed me through each other. The parties all met there. I do not recollect that any particular person requested me to draw the bond. These are three of the bonds (what bonds the paper book did not shew.) I saw them all executed, as much as I recollect; I am a subscribing witness to them.

*Thomas Kitchen*, a justice of the peace, who was also sworn on the part of the plaintiffs below, produced and proved his docket, from which it appeared, that on the 27th *April*, 1826, *John H. Bauer*, obtained a judgment against *David Musselman*, *John Roth* and *Peter Roth*, executors of *Conrad Roth :* Principal, eighty dollars and eleven cents: Interest, three dollars and seventy-seven cents: Costs, one dollar and seventy-two cents. From this judgment an appeal was entered, but never filed in the Court of Common Pleas.

*Jacob Crist*, to whom this judgment was assigned, was also examined as a witness, and testified that the judgment was *certioraried* to court : That afterwards *John Roth* made payment by the hands of *John Rehrey* of *Moore* township, and that he understood *John Roth* had sold his lands to *John Rehrey*.

To *April* Term, 1821, No. 31, *George Siess*, assignee of *Christian*

*Roth*, brought suit against *David Musselman, John Roth* and *Peter Roth*, on a bond dated *August* 26th, 1816, in the penalty of one thousand four hundred and forty-four dollars and forty cents. To the same Term, No. 86, *Daniel Roth* brought suit against the same defendants on a bond of the same date, and in the like penalty. To *August* Term, 1820, No. 113, *Godfrey S. Appelt*, assignee, &c. of *John Roth*, brought suit against *David Musselman* and *Peter Roth*, in which judgment was obtained on the 22nd of *January*, 1821, but it was not among the breaches assigned.

*David Santee*, another witness produced and examined by the plaintiffs below, stated that he heard *Jacob Miller* and *Peter Roth* talk together. *Miller* asked *Peter Roth* how it came *John Roth* was in that bond. *Peter* said to *Miller*, that the securities had nothing to do with *John*. This conversation took place at *Christian's* spring, about eight years before this trial. They were distant about five or six rods; they talked long, but the witness did not understand any thing else. He heard them distinctly.

*Jacob Rixater*, who was also examined in behalf of the plaintiffs, swore that he was a constable in the years 1821 and 1822, and received an execution from Justice *Kitchen*, against *David Musselman, John Roth* and *Peter Roth*, and called on them all. He found goods with *John Roth*, but not with the other two. He made a levy on the goods of *John Roth*; he did not sell them but gave them up, and they remained in his possession. *John Roth* afterwards made a vendue of the goods, and sold them.

*David Musselman*, was also examined for the plaintiffs. His evidence was as follows: I do not now remember what was said, I have forgotten it. I do not know that *Bauer* said any thing to *John Roth*. As far as I know, he was not willing to have *John Roth* in it, but I do not remember right. I was present when the bond was signed. I do not remember particularly what was said. I was examined upon the subject, but do not recollect what I said. I suppose it is on paper. There was something said about a mortgage, but I do not recollect what it was. I think the bond was read, but am not sure. I think that *Bauer* and *Miller* cannot read English.

The will of *Conrad Roth*, dated *August* 17th, 1814, and proved *March* 28th, 1815, and the discharge of *Peter Roth*, under the insolvent laws, on the 15th *November*, 1824, were then given in evidence.

The plaintiffs then called *John Windt*, who testified that he bought the place of *Peter Roth*, and kept back part of the purchase money which was paid to *Appelt*, who had a judgment when the witness purchased, for about three hundred and twelve dollars. He bought the place for one thousand six hundred dollars, and paid the balance to *Peter Roth*. The witness, when he purchased, had common bonds against *Peter Roth*, to the amount of six hundred dollars. One of the witness's sisters had a part. He was bail for *Peter Roth*,

(Bauer and others *v.* Roth and another.)

to *J. Frey*, for near two hundred dollars, which he paid for him, three or four years ago.

A bond dated *August* 26th, 1816, from *John Roth* and *Daniel Schlabach* to *John Demuth*, in the penalty of nine hundred and fifty-eight dollars and sixty-two cents, and conditioned for the payment of four hundred and seventy-nine dollars and thirty-eight cents; a deed bearing the same date, from the executors of *Conrad Roth* to *Jacob Bauer*, conveying one hundred and fifty-four acres, twenty-eight perches, for the consideration of seven thousand six hundred and seventy dollars; a deed from *Jacob Bauer* to *John Roth*, conveying thirty-one acres, one hundred and twenty-eight perches, for the consideration of one thousand five hundred and eighty-two dollars and sixty-five cents, and a mortgage dated *March* 20th, 1820, from *David Musselman*, to *Jacob Miller*, *Jacob Bauer* and *George Keim*, upon one hundred and twenty-two acres, sixty perches, were also given in evidence.

The court was requested by the defendant's counsel to charge the jury " Whether the defendant is bound, if there be sufficient evidence to believe that the obligors were deceived in their act of executing this deed.

" Also, whether the defendant is liable if there be sufficient evidence to believe that the bonds mentioned in the breaches assigned, and those shewn in evidence, are not the bonds against which it was intended to indemnify.

" Also, whether the bond shewn to the jury, in which *Peter Roth* is obligee and *David Musselman* and *John Roth* are obligors, is within the condition, and whether the jury should not lay it entirely out of their consideration.

" Also, whether the defendant is responsible for any default of *David Musselman*, in regard to the assignees of any of the said obligations.

" Also, whether the plaintiffs' claim for damages, does not rest solely on the ground of injury done to them by reason of their liability as sureties of *David Musselman*, and not at all on the mere neglect of *Musselman*, to pay the heirs of *Conrad Roth*.

" Also whether the plaintiffs are entitled to recover at all, if it appears that one of them had assigned his property under the insolvent law, since the execution of the bond, on which the suit is brought."

The court delivered to the jury the following Charge. " It appears that a person of the name of *Conrad Roth*, of *Bushkill* township, died testate some time in the year 1815. By his will he constituted *John Roth*, *Peter Roth* and *David Musselman*, his executors, who with the consent of the widow, sold the farm of which the testator died siezed, to *Jacob Bauer*, for the consideration of seven thousand six hundred and seventy dollars and twenty cents. *Jacob Bauer*, conveyed part of this property, to wit : thirty-one acres, and one hundred and twenty-eight perches, to *John Roth*, for the con-

sideration of one thousand five hundred and eighty-two dollars and sixty-five cents, and also conveyed to *David Musselman*, the residue of the tract, containing one hundred and twenty-two acres and sixty perches. It appears that one *Daniel Schlabach*, became security for *John Roth*, for the amount of money which he had to pay out to the heirs; and that *Peter Roth* and *John Roth*, became security for *David Musselman* in certain bonds which he gave to the heirs of *Conrad Roth*, for their shares in the property conveyed to him; and that *Jacob Bauer*, *George Keim* and *Jacob Miller*, became back-bail to them by the bond upon which the suit now trying is brought. This cause was tried some years ago, and was removed by writ of error to the Supreme Court: and as it is the wish of the court, to give you every information relative to the case in their power, I will turn your attention to parts of the opinion of that court, on that case, as delivered by Judge Duncan. (Here the court read from the opinion of the Supreme Court, in the case of *Roth et al.* v. *Bauer et al.* 15 *Serg. & Rawle*, 104, 105, 106, 107.)

" From this case, it appears that the Supreme Court have put the construction of law upon the bond in controversy.

" There are three questions for your determination.

" 1. Is the bond the deed of *Jacob Miller*, or not?

" 2. If so, the question of damages arises, which is for your consideration, and

" 3. If the bond is found to be the deed of *Jacob Miller*, and there is a breach of the condition of it, what should be the form of the verdict?

"As to the first point. It appears that *Mathias Gress, Esq.* is a subscribing witness to the bond; and he states that it was signed, sealed and delivered by *Jacob Bauer*, *George Keim* and *Jacob Miller*, in his presence; that he has some recollection that *Jacob Bauer* said he would not go security for *John Roth*, and that *Daniel Schlabach* was sent for to go his bail, and it is shewn by a cancelled bond produced by the plaintiffs, that *Daniel Schlabach* did actually become security for *John Roth*, for the money he had to pay out for the thirty-one acres and a hundred and twenty-eight perches. *David Santee* has been called as a witness on the part of the defendants, and examined before us in relation to this subject, as has also *David Musselman*." (Here the court stated to the jury the substance of the testimony of *David Musselman* and *David Santee*.)

This is the substance of the evidence, as to the execution of the bond. Should the jury be of opinion with the plaintiffs on this part of the case, that *Jacob Miller* duly executed the bond in this suit, the question of damages for the breaches assigned, next arises. Justice *Thomas Kitchen* has produced his docket before us, and has stated that an action was instituted before him, by *John H. Bauer*, against *David Musselman*, *John Roth* and *Peter Roth*, for one instalment due upon a bond given by them, which it rather appears was one of the bonds against which the plaintiffs were intended to be indemnified

(Bauer and others *v.* Roth and another.)

by the bond in suit. Upon this action, judgment was rendered by the justice on the 27th of *April,* 1820, for eighty dollars and eleven cents debt, one dollar and seventy-two cents costs. This judgment was subsequently assigned to *Jacob Christ,* who has appeared before us, and testified that the judgment was *certioraried* to court: That afterwards *John Roth* made payment by the hands of *John Rehrig* of *Moore* township; and that he understood *John Roth* sold his land to *John Rehrig.* It seems that an execution on this judgment was issued and put into the hands of *David Rixater,* who has appeared before you and testified. (Here the court stated the substance of his testimony.)

" This is the substance of the evidence, so far as relates to this judgment before Justice *Kitchen.* There were two actions commenced upon two of the bonds given by *David Musselman, Peter Roth* and *John Roth,* one to *Christian Roth,* and the other to *Daniel Roth;* both which actions were commenced before the institution of this suit. (Here the court stated the action to *April* Term, 1821, No. 31, brought by *George Siess* assignee of *Christian Roth* v. *David Mussleman, Peter Roth* and *John Roth,* and the bond upon which it was founded, dated 26th *August,* 1816, and also the action to the same Term, No. 86, at the suit of *Daniel Roth,* against the same defendants, and also the bond upon which it was founded, dated 26th *August,* 1816.)

" The court are of opinion that in strictness of law, the jury may give the plaintiffs the full amount due in each of those actions at the commencement of this suit; but I had rather that those claims should be tried in a subsequent *scire facias,* when the proof will be more full than now exhibited, for you will recollect that the plaintiffs in giving these records in evidence, could go no further than the institution of the suits.

" 3. If you should be of opinion that the bond in suit is the deed of *Jacob Miller,* and that a breach of the condition of it has occurred, the plaintiffs would be entitled to damages, and a verdict for the penalty to secure any damages which may have happened after the bringing of the present action, or which may hereafter happen; a *scire facias,* must issue to recover such damages after the commencement of this action. To such *scire facias* the defendant may make any defence which arose since the commencement of this action, and was not the same that had been before tried and decided."

The following answers were given by the court to the questions propounded for their opinion:

" 1. That if the bond was obtained by fraud, imposition or deceit, it will not bind the obligors; but fraud is not to be presumed.

" 2. We answer the second proposition favorably to the defendants, as to the principle of law stated, but can see no evidence of the fact, hypothetically stated; the facts, however, are the exclusive province of the jury.

(Bauer and others *v.* Roth and another.)

" 3. The Supreme Court have set this point to rest by their decision in this very case. There is nothing to avail the defendant in this point ; but this bond cannot be taken into consideration, as it is not set forth in the breaches assigned.

" 4. We do not think that there is any thing in this point. The indemnity is against the bond, into whosoever hands it passes.

" 5. We are of opinion that the plaintiffs' claim for damages, does rest on the ground of injury done them by reason of their liabilities as sureties for *Musselman*, and on the neglect of *Musselman* to pay the heirs of *Conrad Roth*. The measure of damages, is the amount of injury actually sustained.

" 6. This being a joint suit, the circumstances of one of the plaintiffs having taken the benefit of the insolvent laws since the institution of this suit, for such has been the proof, notwithstanding the omission to state that fact in the point, cannot prevent the plaintiffs from recovering. The court can exercise a control in directing *Peter's* interest in the sum recovered to go to his assignee, on his properly qualifying himself to act."

The jury rendered a verdict for the plaintiffs, and assessed damages on the breaches assigned in the declaration, at one hundred and twenty-eight dollars and eighty-three cents. Judgment was entered for the penalty of the bond, and that the plaintiffs have execution against the defendants for the damages assessed by the jury, &c.

The errors assigned in this court, were as follows :

" 1. The court erred in adjudging the plea of *nil debet* insufficient and in awarding judgment of *respondeat ouster*.

" 2. The court erred in adjudging the special plea of *non est factum* insufficient, and in awarding judgment of *respondeat ouster* thereon.

" 3. The court erred in adjudging the plea, setting up the insolvency of *Peter Roth* one of the plaintiffs, insufficient, and in awarding judgment of *respondeat ouster* thereon.

" 4. There was error in charging the jury, that the suit being joint, the circumstance of one of the plaintiffs having taken the benefit of the insolvent laws, since the institution of the suit, cannot prevent the plaintiffs from recovering.

" 5. There was error in charging the jury that the indemnity is against the bond, into whosoever hand it passes. The court should have charged that the defendant is not responsible for the default of *David Musselman* in regard to the assignees of any of the said obligations.

" 6. There was error in charging the jury that the plaintiffs' claim for damages does rest at all on the neglect of *Musselman* to pay the heirs of *Conrad Roth*. The court should have charged that their claim for damages rests solely on the ground of injury done them by reason of their liability as sureties of *David Musselman*, and not at all on the mere neglect of *Musselman* to pay the heirs of *Conrad Roth*.

" 7. There was error in charging the jury that in strictness of law,

they might give the plaintiffs the full amount due in each of those actions mentioned in the breaches assigned at the commencement of this suit.

After argument by *Jones* and *J. Sergeant* for the plaintiff in error, and by *Brooke* and *J. M. Porter* for the defendants in error,

The opinion of the court was delivered by

KENNEDY, J.—The judgment given on the demurrers was no doubt wrong, but then the error is not such as the defendant below can complain of, for it is in his favour. The court upon being satisfied that the pleas demurred to were not sufficient in law to bar the plaintiffs of their action, ought, instead of a judgment of *respondeat ouster*, to have given a judgment *quod recuperet*. The judgment of *respondeat ouster* is merely interlocutory and never given either upon a demurrer or trial of a plea in bar. It is confined to a plea in abatement put in *before* any plea in bar has been pleaded, and decided upon demurrer in favour of the plaintiff. See *Tidd's Prac.* 693, 694, 8th edition. For if a plea *puis darrien continuance* be pleaded in abatement, after a former plea in bar, the judgment must be peremptory, whether given upon demurrer or on trial; because after pleading in bar, the defendant has answered in chief, and therefore can never have judgment to answer over. See *Beaton v. Forrest, Aleyn,* 65, 66. *Abbot* v. *Rugesley, Frem.* 252. *Gilb. C. P.* 105. 2 *Tidd's Pr.* 902, 8th, edition. 1 *Chitty's Pl.* 571. *Bul. N. P.* 310. In *Stoner* v. *Gibson, Hob.* 81, *b.* it is said, it was agreed, that if the defendant pleaded in bar to the plaintiff's action a plea which was good, and the plaintiff demurred to it, and the defendant pending the demurrer, pleaded another matter, *puis darrein continuance,* which is decided against him, either on demurrer or on trial, still he would be entitled to the benefit of his first plea, because it being a good bar to the plaintiff's action, and standing confessed by him upon the record, he can not have a judgment in his favour against his own confession. This, if correct, would seem to form an exception to the general rule laid down in the book above cited. But whether a plea *puis darrein continuance* can be received at all after a demurrer, has been doubted in *Staple* v. *Heydon,* 6 *Mod.* 7, by POWELL Justice; in *Martin* v. *Wyvill,* 1 *Stran.* 493, per EYRE Justice, who cited *Moore,* 871, and in *Sparks* v. *Crofts,* 1 *Lord Raym.* 266, per HOLT, Chief Justice, although he said, *Stoner* v. *Gibson, Hob.* 81, was so. But according to the report of this case in *Moore,* 871, pl. 1210, which is directly contrary to *Hobart,* it was resolved that a plea *puis darrein continuance* could not be pleaded after demurrer. See 1 *Chitty's Pl.* 572, 573.

That the plea of *nil debet* upon demurrer in this case was bad, can admit of no doubt. If the bond declared on here had only been introduced as inducement to the action, *nil debet* might, or might not have been a good plea. In debt for rent claimed under a lease by indenture it is a good plea, because the indenture is not considered the *gist* of the action. It does not acknowledge a debt like an obli-

gation; the debt accrues by the subsequent enjoyment of the demised premises under it, and it will be received as evidence to shew the relation of landlord and tenant, between the plaintiff and defendant, and the amount of rent, and when payable, *Gilb. C. P.* 62, 63. But this action is grounded upon the bond itself, and therefore *nil debet* was not a good plea. See *Jones* v. *Pope*, 1 *Saund.* 38, and the case cited in note 3.

The plaintiffs below alleged as cause for their demurrer to the next plea, that the matters therein contained, were such as might have been given in evidence under the general issue, which had been previously pleaded.

I am inclined to believe that the attorney of the plaintiffs was mistaken in this when he assigned it as cause for demurrer; because, it was not sufficient in law to avoid the bond, and therefore could not have been given in evidence on the general issue; but had it been sufficient for that purpose, then I think, without a doubt, it would have been admissible on the general issue; but still I think, notwithstanding that, the plea would also have been good, and the defendant below upon the demurrer of the plaintiffs to it would have been entitled to a peremptory judgment, that would have discharged him at once from all further claim of the plaintiffs upon the writing here declared on. The substance of the plea is, that the defendant below, with *Jacob Bauer* and *George Keim*, agreed to join in the execution of a bond to *Peter Roth* alone, one of the plaintiffs below, to indemnify him, &c. and positively refused to be bound to *John Roth*, the other plaintiff, in any manner or form whatever to indemnify him, &c. either severally, or jointly and severally with *Peter Roth*, and that neither of them being able to read the writing, nor to understand the English language in which it was drawn up, they all signed it upon trust, and delivered it to *Peter Roth*, without having heard it read, or explained, or interpreted, or having requested it to be so in any way, believing that it was written in exact conformity to their previous agreement. The plea does not state how or why the deviation from their agreement, in writing the bond came to be made, whether by fraud of the plaintiffs below, or mistake of the scrivener, nor attempt to account for it in any way. Now if these circumstances thus set forth, had been sufficient in law, to have prevented the instrument from becoming their deed, notwithstanding they had signed, sealed and delivered it, without requesting it to be read, interpreted or explained in any way, the plea would have been good according to the established rules of pleading, because it would then have disclosed matters unnecessary for the plaintiffs to have proved on the plea of *non est factum*, in order to have established the writing to be the deed of the defendant below, but yet sufficient to have shewn that it never was his deed. He in his plea confessed the signing, sealing and delivery of the instrument, in conjunction with *Jacob Bauer* and *George Keim*, which is all that the plaintiffs below have charged in their declaration, and is like-

(Bauer and others *v.* Roth and another.)

wise all that was necessary for the plaintiffs in the first instance to have proved on the general issue: and besides this, for the purpose of avoiding the bond he has also set forth the other matters, which were not immediately and necessarily connected with the sealing and delivery of a deed, and of course such as the plaintiffs on the general issue could not have been required to give evidence of; and had they only been sufficient in law, to have avoided the bond, it would have been clearly competent for the defendant to have pleaded them specially as he has done. See 1 *Chitty's Pl.* 442, 443. It would have fallen within the principle of the case of a deed delivered as an escrow, to be delivered to the party in whose favour it is made upon the performance of a certain condition; he however gets it into his possession without the performance of the condition, and without the consent of the party who executed the deed, all which may be either pleaded specially or given in evidence on the general issue, 1 *Chitty's Pl.* 424, 425; or where the obligor is a monk or a *feme covert*, it may be given in evidence under the general issue or a special *non est factum, Com. Dig. title Pleader*, 2 W. 18. In these latter cases it has been so settled on the ground of an entire want of capacity on the part of a monk or a *feme covert* to execute a deed; but still as the party did actually seal and deliver the writing, that may be admitted, and the *incapacity* set forth to shew that it is still not his or her deed in law. So I apprehend that as it is equally necessary that the *assent of the mind* of the party, as that sufficient *capacity* in contemplation of law, should attend the sealing and delivering of the writing in order to make it his deed, there can be no good reason why the same form of pleading may not be adopted.

In this state the defendant is at liberty to plead as many pleas in the same action as he pleases, just as the plaintiff may insert counts in his declaration; and I am not aware that the circumstance of two counts in the same declaration, or that of two pleas in the same action, being substantially the same, will render either bad on demurrer.

But I consider the plea of special *non est factum* in this case insufficient, upon the authority of the second resolution in *Thoroughgood's Case*, 2 Co. 9, *b.* where it was resolved, that if an illiterate man, seals and delivers a deed without requiring it to be read or the contents of it to be made known to him, although it be penned contrary to his meaning, yet it is good and unavoidable. The same doctrine is laid down in 1 *Wood's Conv.* 374, *Powell's ed. title Execution of Deeds*, sec. 12, *A.* It was settled in *Manser's Case*, 2 Co. 3, that the reading of the writing to an illiterate man, who is about to execute it as his deed, or the interpretation of it to one unacquainted with the language in which it is indited, is not necessary to make it a valid deed, unless he require it to be read or expounded. It is also laid down to the same effect by the author of the *Touchstone*, vol. 1, 54. From the terms of the plea it is plainly inferible that no such request was made; and it contains no averment that

(Bauer and others *v.* Roth and another.)

the writing was mis-read or the contents of it mistated in any way whatever, which being according to the resolution in *Thoroughgood's Case*, the very *essence* and *gist* of such a plea, ought therefore to have been introduced, if it were so, according to every rule of pleading as well as of reason.  If however the fact would not have warranted such an averment, as I presume it would not, otherwise it would have appeared in the plea, then this form of plea ought not to have been resorted to.  I however have no doubt but a party executing a deed under such circumstances, where it is made clearly to appear that the contents and effect of it are materially different from what it was actually agreed they should be, whether the deviation arose from design and fraud, or from mistake on the part of the scrivener, would, if innocent himself, be entitled to relief in equity.  See *Clarkson* v. *Hanway*, 2 *P. Wms.* 205, where the circumstances, that instructions were given in the absence of the grantor by the grantee, and none at any time given by the grantor, who was an old man of weak mind, to the drawer of the deed for preparing it, and that it did not appear to have been read to him at the time of his executing it, and the consideration mentioned in the deed appearing to be inadequate to the value of the estate granted, were held to be badges of fraud, and ground for relief.

In this state we have no court of equity, and therefore it has been considered that whatever would be deemed sufficient ground for relief against a bond in such court, may here be made the ground of defence in a court of law, and given in evidence under the plea of payment with leave to give the special matter in evidence; or if the bond be conditioned for the performance of certain covenants, or collateral matters, the defendant having prayed and obtained oyer of the condition, and pleaded performance thereof, with leave to give the special matter in evidence, may under the same, give all such matter for relief in evidence; or in either case may plead it specially, *Swift* v. *Hawkins*, 1 *Dall.* 17. *Baring* v. *Shippen*, 2 *Binn.* 154. *Latapee* v. *Pecholier*, 2 *Wash. C. C. R.* 180. *M'Sherry* v. *Askew, et al.* 1 *Yeates*, 79. *Bender* v. *Fromberger*, 4 *Dall.* 439. *Webster* v. *Warren*, 2 *Wash. C. C. R.* 456. *Roth* v. *Miller*, 15 *Serg. & Rawle*, 105.  And taking into view the course of proceeding peculiar to us, I must confess, that my mind at times has not been altogether free from doubts; but upon full deliberation, I incline to think that the plea, in order to constitute a perfectly good defence against the bond in equity, ought to have been explicit, and that it is defective in not stating the transaction more fully, and giving to it some definite character, by shewing particularly how the deviation from the previous agreement in drawing the bond came to be made; whether by fraud or mistake, and that it was done without the knowledge or assent of the defendant, for without all this, in case of a demurrer to his plea, I do not see how he could claim to have a judgment in his favour unless he has stated in his plea all the circumstances with

such precision that the court may see whether it has arisen from fraud or mistake, and decide, distinctly, upon which it is that he is entitled to relief. I am the better satisfied with this conclusion, as the defendant has already been permitted on the trial of the issues in fact in this case, to give in evidence to the jury, under the direction of the court, all the special matters and circumstances connected with the giving and obtaining of the bond, upon which he founds his claim to relief, and after a full hearing they have decided against him. The difficulty in this respect which has been presented here induces me to believe, that gentlemen of the bar ought to be very cautious in demurring to pleas which set forth special matters and circumstances from which fraud or mistake may be inferred to have been practiced, or to have taken place in the obtaining of the writings upon which the suits are brought. Unless the plaintiffs are willing to admit the truth of all such special matters and circumstances, a demurrer ought never to be thought of, otherwise it appears to me, to be a perilous course, and one that may defeat a very just cause of action.

The next error assigned is in the judgment of the court below upon the demurrer to the plea, that one of the plaintiffs had made an assignment of all his property to a trustee for the benefit of his creditors, and obtained a discharge under the insolvent laws of this state. The insufficiency of this plea to prevent the further maintenance of the action by the plaintiffs below, is too plain even to admit of doubt or argument. The 4th section of the insolvent law of the 20th of March, 1814, declares that " *no suit* brought by such debtor and pending at the time of the appointment of said trustee or trustees *shall abate* thereby, but the same *shall be continued* and the money or property recovered therein shall be paid or given to the said trustee or trustees." The law does not require that the names of the trustees shall be substituted for that of the plaintiff in such cases, nor that they shall appear in any form upon the record. Neither has it been the practice to substitute them on the record for the plaintiff. The argument urged in support of the plea is, that the trustee appointed never having given the security required by the law, there was therefore no person in being, who was authorised to carry on the suit and to receive the money when recovered. If this had been the only difficulty which the defendant below conceived that he had to encounter at the time he put in this plea, it appears to me, that the court below could have granted to him all the relief that he could have wished for in this respect, upon his paying the money demanded into court, with the costs incurred up to that time; the court would then have made an order staying all further proceedings in the suit: but upon no principle whatever could the discharge of the plaintiff under the insolvent laws, furnish a pretence for a plea against the further maintenance of the action. If *Peter Roth*, the insolvent, had been the only plaintiff in this suit and the defendant had satisfied the court below that he had a good

(Bauer and others *v.* Roth and another.)

defence against the plaintiff's claim on the merits, and that he would have to encounter considerable expense in order to establish it, the court possibly in its discretion might have staid the further proceedings in the action, until some one having authority to manage and direct the suit on the part of the plaintiff should appear. But in this case *John Roth,* the other plaintiff, who appears to have been the plaintiff really damnified, was perfectly competent to direct and carry on the action and to have received and given a good acquittance for the money when recovered and paid; so that there was not the slightest reason for claiming protection from the summary and equitable powers of the court. The cause specially assigned for the demurrer to this plea, is, that the matter therein set forth, if it could have availed, ought to have been shewn to have occurred since the last continuance of the cause, instead of which it appears, on the face of the plea itself, to have taken place long before. If this plea were otherwise good, this is not an objection which goes either to the form or the merits of it. It is a mere irregularity in point of time in putting in the plea, and no cause for demurrer, whatever it might have been for setting it aside if the court below had been moved for that purpose; which power perhaps may be fairly questioned since the act of the 21st of *March,* 1806. See *Anonymous,* 2 *Vent.* 58. *Wilson* v. *Wymonsold, Sayre,* 268; and *Morgan* v. *Dyer,* 10 *Johns.* 161.

I can scarcely avoid thinking that the defendant below and his counsel had very little confidence in the merits of the previous pleas, or otherwise they never would have put their defence in jeopardy by resorting to this last plea; for considering it in the light of a plea *puis darrein continuance,* it would in England at all times have been deemed a waiver of all prior pleas. The rule is well settled there, that after a plea in bar, if the defendant plead a plea *puis darrein continuance,* it is a waiver of his bar, and no advantage shall afterwards be taken of it. Nor shall he be permitted to recur to and to proceed on the former plea. *Barber* v. *Palmer,* 1 *Salk.* 178, *S. C.* 1 *Ld. Raym.* 693. 12 *Mod.* 539. 1 *Chitty's Pl.* 571. 2 *Tidd's Pr.* 902. The law probably may be different here, where the defendant is at liberty to plead as many pleas as he pleases, and to hold fast by all. On this however, I do not wish to be understood as giving any decisive opinion, but have suggested it as a caution against frivolous pleas *puis darrein continuance.*

The fifth error complained of does not seem to have been presented by the evidence in the cause, but if the point had been raised by the evidence, the court was right in its answer.

There is not the least ground for complaint in the sixth error assigned. In the assignment of this error a very material part of what the court below told the jury in relation to the point of which the court was then speaking, is omitted, to wit, "the *measure of damages is the amount of the injury actually sustained.*" Taking then this clause in connection with that which is made the ground

(Bauer and others *v.* Roth and another.)

of exception in this error, the principle laid down by the court to the jury, in regard to estimating the amount of the damages in case they should find for the plaintiffs below, was as favourable for the defendant as he could ask.

Neither do I think that the plaintiff in error, has any cause for complaint in respect to that part of the charge of the court to the jury, which is made the basis of the seventh and last error; because the court at the same time that they gave the direction complained of, recommend to the jury, in case they should find for the plaintiffs below, to regulate the amount of the damages by the amount of the moneys actually paid out by the plaintiffs with interest thereon from the times of their payment, which was adopted by the jury, and was certainly the most favourable rule for the plaintiff in error, that could have been laid down.

I however am far from being convinced that the court below would have been in error if they had gone to the full extent of all that is complained of, and told the jury, unqualifiedly, that they ought to assess the damages by the amount of the several sums of money, with the interest thereon, which had become payable anterior to the commencement of this action upon the obligations referred to in the condition of the bond of the defendant below, for which the plaintiffs there were bound as the sureties of *David Musselman*, so far as the same remained still unpaid by *David Musselman* or the plaintiff in error; for the condition of the bond in this action, is not merely that the plaintiff in error, and his co-obligors, should indemnify and keep harmless the defendants in error, but likewise that the said *David Musselman* should pay, or cause to be paid, the aggregate of the obligations therein mentioned, in which the plaintiffs below were his sureties, *on the days and times appointed* by the same for that purpose. Now if *Musselman* failed to pay these sums of money, or any of them, on the appointed days and times, there was a breach of the condition of the bond in suit the instant that he so failed and the plaintiff in error became liable to be sued upon it; and as often as he failed to pay after his first delinquency, there was a new breach of the condition on the part of the plaintiff in error, of his bond. Breaches to this effect of the condition of this bond, have been assigned by defendants in error, in their declaration. To these breaches certainly the plea of *non damnificatus* would have been *no* answer; for if it had been put in and demurred to, the defendants in error would have been entitled to judgment. Such too would seem to have been the opinion entertained at first by the attorney of the defendant below; for instead of this plea, a performance of the condition was put in which met these breaches directly. Sergeant *Williams*, in his note (1) to the case of *Cutler* v. *Southern*, 1 *Saund*. 116, who has referred to a number of authorities on the subject, lays down the following distinction, that " this plea, that is, *non damnificatus* cannot be pleaded where the condition is to *discharge or acquit* the plaintiff from such a bond or other particular thing, for there the defendant must

(Bauer and others *v.* Roth and another.)

set forth affirmatively the special manner of performance. But it is otherwise where the condition is to discharge and acquit the plaintiff *from any damage* by reason of such bond or other particular thing, for that is in truth the same with a condition to indemnify and save harmless." In the case before us, one part of the condition was that *Musselman* should pay the several sums of money for which the defendants in error were bound as his sureties at *the time specified* for that purpose, and thereby in effect *discharge* and *acquit* them from their obligations; with which nothing but a punctual payment of the moneys or otherwise a formal acquittance, obtained for the defendants in error from their obligations on account of *Musselman,* could be considered even a substantial compliance. I think it also very evident that the great object of giving the bond in question, from the terms in which the condition is drawn up, was, to prevent the defendants in error from paying the moneys out of their own property, and especially to prevent its being taken in execution for that purpose, by putting it in their power to proceed by suit upon the bond from time to time to collect the money of the plaintiff in error and his co-obligers, as *Musselman* became delinquent.

In the case of *Holmes et al.* v. *Rhodes,* 1 *Bos. & Pul.* 638, it was held, that *non damnificatus* could not be pleaded to debt on a bond conditioned for the payment of a certain sum of money at a certain day to a certain *R. W.,* for the payment of which the plaintiffs were bound in an obligation with the defendant as his sureties, and thereby acquit, release and discharge the said plaintiffs, &c.; showing distinctly on its face that it was a bond of indemnity. The court said, "that the plea of *non damnificatus* was no answer to that part of the condition by which the defendant undertook to pay the sum for which the plaintiffs bound themselves, and was therefore bad." The only shade of difference between this case and the one under consideration, is, that in the latter the condition of the bond is, that *Musselman, who was not bound in it,* should pay certain sums of money at certain days to certain persons to whom the obligees were bound with him in obligations as, his sureties for the payment; and in the former, the condition was that the *obligors* should pay. Whether the condition be that the *obligor* or *another* shall do the particular act required to be done at a specified time, does not change or vary the character or nature of the condition; in either case, if the act be not done by the time appointed, the bond will become forfeited and the obligee entitled to sue upon it. And it appears to me that the Supreme Court of the state of *New York,* have gone still further in the case of *Chace,* administrator of *Stranahan* v. *Hinman,* where it was held that an *indemnity* against *any liability* for damages or expenses would entitle the party to sue on his indemnity, and to recover to the full extent of his *liability,* without his having paid or discharged it. 8 *Wend.* 452. These observations on this last point, are not given as the opinion of the Court, for the jury having adopted a different principle, under the recommendation of the court

(Bauer and others *v.* Roth and another.)

below in ascertaining the amount of the damages, rendered it unnecessary for the court to express one upon it.   The Judgment of the Court below is affirmed.

Judgment affirmed.