The opinion .of the court was delivered by
Hüston, J.
This, case has been elaborately and ably argued. The counsel have, however, embraced, in the discussion, much ground over which it will not be necessary to follow them. . The view I shall take of the pause will bring me .to a conclusion without deciding many of the points raised in the argument.
It.is assumed by both parties^ that the late Charles Thompson and Hannah his wife, were possessed of a valuable estate in lands, of which the fee simple was in Mrs. Hannah Thompson; and in which, as they never had children, Charles Thompson had not a claim to tenancy by the curtesy. I shall state the parol evidence in the cause, as well as the deeds which- have been executed: clearly, in the cause now trying, Charles Thompson had. not a spark of interest; and-not even the bias which might.be supposed to arise from relationship to the parties. The claimants are none of them related to Charles. Thompson, otherwise than as relations of his wife; and as such their affinity to him is the same.
In November, 1798,. Mrs. Thompson, wishing to make a provision for her husband during his life, if.he survived her, and to .settle her estate after her own death, and that of her husband, on consulting with him directed certain conveyances to be prepared; *111 and he employed a scrivener in the neighbourhood to draw them. They were a deed dated the 17th of November, Í798, from Charles Thompson and Hannah his wife, by which several tracts of land, particularly described, were conveyed to G. M. Potts, the son of the scrivener, and to his heirs; “In trust, nevertheless, for the purpose of conveying the whole use and profits of all and singular the aforesaid described tracts of land, with their and every of their appurtenances, unto the said Charles Thompson and Hannah his wife, during the-term of their natural, lives, and the life of the survivor of them; and the remainder over, after their decease, to the heirs of Robert MíClenachan and Amelia his wife, in fee simple;” reserving a life estate, in a small-part thereof, for Page Codorus, a black lad, born in the family of Charles Thompson. This deed was duly acknowledged by Mr. and Mrs. Thompson.
The second deed, which was dated-the 22d of November, 1798, was from G. M. Potts, the trustee. After reciting the before-mentioned deed to him from' Charles Thompson and his wife, it proceeds: “ G. M. Potts, to execute the said trust, grants to Charles Thompson and Hannah his wife, the five tracts aforesaid, during their joint lives, and the life of the survivor, and the remainder over, after their decease, in the manner following; viz. to the above named Robert M'Clenachan, the .younger, (a son of Robert and Amelia M'Clenachan,) a certain piece of land, part of Harriton, (and here it is particularly described,) containing one hundred acres. And to the said Charles M'Clenachan, (another son of Robert and Amelia,) and his heirs and assigns, all the residue of the Harriton plantation, containing five hundred .and ninety-eight acres more or less; (reserving a small part, particularly described, to Page Codorus, during his. life.) And to John MíClenachan, (another son of Robert and Amelia.M‘Clehqchan,) his heirs and assigns, two tracts, particularly describing them; one containing one hundred and fifty acres, and the other- seventy-six acres: and to Hannah M‘Clenachan and her'heirs, (a daughter of -Robert and Amelia;) the two remaining tracts, particularly describing them; one containing one hundred and fifty-six acres twelve perches, and the other one hundred and fifty acres.” •'
It was fully proved that this latter deed, as well as the first, was prepared by the direction and consent of Hannah Thompson and her husband; that the trustee never, saw either of the deeds, or was consulted as to their form or contents, until the day they were executed; that the deeds were executed on the same day, and at the same time and place; that both were signed and sealed before either was attested by the witnesses, and the first duly acknowledged by Mrs. Thompson; whose examination, as it appeared, was separate and apart from her husband, and knew, the contents: and it was proved,' that the second deed, from G. M. Potts, was executed by him at the request of Mrs. Thompson, as' well as of her husband, for the purpose of vesting the several portions of land *112 in the persons severally named, and in the manner mentioned and specified in the said deed from G. M. Potts.
It will be unnecessary to decide'what estate the children of Robert and Amelia M‘Clenachan would have taken if. the second deed had never been executed, or had been drawn and executed at a different time and under different circumstances; for we are of opinion, that, on the evidence in this cause, the two instruments are to be considered as parts pf the same transaction, made for the same purpose, directed by the same mind, and carrying into effect the same plan; and that, so viewed and explained, there is no inconsistency between them.. As there is no inconsistency or repugnance in a deed,-which, in the premises states, that the grantor has a plantation, and makes that deed to grant it to his two children, and then proceeds to describe a part specifically, and gives that part to one child, .and the remaining part to the other; for the habendum may make that special and particular, which in the premises is more general and indefinite.
It has been contended, that this deed of Charles Thompson and wife, being the deed of á married woman, which has its effect from her separate examination and acknowledgment, cannot be in any manner affected-by parol proof; but must stand unalterable in the very words it is .Written. Independent of authority on this subject, the-law could not.be so.' A woman sole may sign a deed which from fraud or mistake doesvnot convey what she intended, nor to whom she intended. All agree that this, on due proof, may be set right. A married woman has as much understanding, can form a design with as-much intelligence as before she was married, or when she becomes a widow: but a married woman’s directions may’be mistaken or misrepresented in a deed as well as those of a single woman; and there is precisely as much reason for ratifying in the one case as in the'other. The very provision in the law— that she shall be examined apart from her husband, and the, contents be known — is, on the ground that she has a mind, a plan, an ■intention, and a design to be effected by the deed she executes. The separate examination is solely to guard against the influence of her husband; and, when that is done,.-her deed is to be considered in law the same as if it was the deed of the same woman being a féme sole; . '
We have an authority on this point which, unless we overrule it, decides this case. Thompson and Wife v. White, 1 Dall. 429, was the case of a deed by Mrs. Saltar, a married woman, in whom was vested the fee simple of the estáte; having no children she-wished it to be conveyed to her husband, if he survived her, during life; then to her sister, and if she died without issue, to her half-sisters; but an absolute deed was made by her husband and her to her brother-in-law, who made an absolute deed in fee simple to her husband, who was to have conveyed or demised to her sister, the remainder to her half-sisters. Mrs. Saltar- died, and then her hus* *113 band and his heir entered; her sister and husband'brought ejectment, and recovered. In that case she had joined her husband in the deed conveying the land in fee simple to his brother, who honestly reconveyed it to her husband; proof was admitted that these conveyances, though on the face<of them absolute, were in fact in trust: wha't that trust was, and for whom, was made out by parol, and the cestui que trust recovered.
If the deed, in the. case before the court, to G. M.-Potts had been absolute, and a reconveyance to Charles Thompson, and wife in fee, parol evidence might have set aside the estate thereby created, and the intention of Mrs. Thompson would have been carried Into effect in direct opposition to both the deeds; and it would be strange if parol evidence will not be admitted to give effect to both the deeds, and. to show that , taken together they distinctly and perfectly accord with her intentions. If it should be said.there was fraud in that case, I reply that mistake is as much and as reasonable a ground of relief as fraud; but what fraud existed in that case more than in this? White, the defendant, claimed as heir of L. Saltar; the deeds appeared fair, and Mrs. Saltar had acknowledged the first in due form, or the question would not have arisen. The only fraud in the defendant, was in claiming what he had heard, and perhaps believed, was intended to have been given to another; and I see'no reason to suppose the plaintiffs below in this cause have any less information,of the intention of Mrs. Thompson, and this second deed being ágreeably to her intention, than White had in that case: whatever may be their knowledge on this subject, is not for us to inquire. The whole evidence makes out a plain case in favour of the heir of Charles M‘Ciena chan, to the part conveyed to him.' ' .
There is scarcely any subject more perplexed than in what cases and to what extent parol evidence shall be admitted. Not only have different men viewed the subject differently, but the same man at different times, has held opinions not easily reconciled, and I doubt whether any lawyer, of many years standing, and much reflection, can say his mind has never wavered on this subject. In theory, adhere, to the writing — neither see nor hear any thing out of the deed, seems to-sound well; and it would work w,ell in practice, if all who gave instructions to scriveners were perfect;' if all scriveners perfectly understood their instructions, and put them on paper perfectly according to law, and the whole was completed by executing them at the time and in the order and manner which their nature and the law requires; but when this perfection cannpt be even imagined to exist in this world, and the want of it is as apparent in deeds and other writings, as any where else, the beautiful theory must yield to substantial justice. In the present case the testimony is full and clear, the witnesses unexceptionable, and the great if not the only difficulty arises from the difference of the dates of the deeds: *114 when it is once proven that they were executed,together, and that both were drawn by the instructions.of the same person, and that person the grantor, no-doubt can'remain, for the latter is rather explanatory of the former than contradictory. G. W. Potts, the trustee, was but an instrument in the hands of Charles Thompson and wife; his seisin was bu.t for an instant, and for a particular purpose; his wife would not have dower out of these lands, nor a judgment against him be a lien on it. Mrs. Thompson could not convey to her husband a life estate or any estate; to give the husband a life estate a trustee was interposed — but for this, it is apparent the conveyance would have been made directly to the several persons of the name of APClenachan, for such estate and for such parts of the land as pleased Mrs. Thompson. If G. FT. Potts had not executed the trust for some years, if it did not appear that all was done according to the direction of the.grantors, the law would be otherwise; in such case the deed vesting the trust in him; would be the only guide, except in case of mistake or fraud proved in drawing it; but here the utmost precaution was taken to leave nothing to his truth-and honesty, or to his discretion; the deed vesting the trust in him, and the deed conveying the lands from him to the several persons for whom it was designed, were prepared and present, and, according to the testimony of the surviving subscribing witnesses, both deeds were signed and sealed before the witnesses were called to attest either, and the witnesses signed them in succession without rising from the table.
A deed duly acknowledged- in this country, is often compared to 'a fine in England. In one respect they agree; the interest'of a married woman in lands may be passed. The one and the other is also used frequently as part of a set of conveyances used to vest in a husband an interest in lands of his wife, greater than he would otherwise have.' And, in such case, the two modes'of conveyance are of nearer resemblance. In England, a-deed declaring the use for which the fine is levied, and to whom and for what estate it -is Intended to inure, is generally drawn; this may be executed before or after the fine. It was decided in Berwick’s case, 2 Co. Rep. 57, that if husband and wife levy a fine of lands whereof they are seised in fight of the wife, and the husband alone declare the uses of the fine, this declaration of the use shall bind the wife, if her disassent do not appear, although her assent to the declaration of the uses cannot appear; for when she joine.th with her husband in the fine, it shall be intended, if the contrary cannot appear, that she joined also with him in agreement, in the declaration of uses. And I apprehend that in case of an absolute sale for money, and where the fine is levied in pursuance of a covenant by the husband, this is generally the case; where the fine is levied on a marriage and to settle the order of succession of the estate, a deed to- lead the uses is made; for if no such deed and no money consideration has *115 passed, the estate after the fine is vested in interest: as it was before.
This will give an answer to the objection- made here, that the deeds were dráwn by the direction of Charles Thompson, for although they were, yet as his wife acknowledged, in due form of law, that one which it was necessary should be executed by her, and she being in fact ás capable-of considering and deciding how her estate should go, as if she were sole; and the second acknowledgment making her in law as capable of disposing of it as if she were sole, the whole is to be considered as the deliberate disposition of ah estate by those who had right to it and were capable of making disposition of it. -.
Lord Cromwell’s case, also, in 2 Co. Rep. 70, is strong to show that where all is done at the same time, and a variance in the deed by trustee from the previous agreement appears, it. will be supported on the ground of being governed by the intent of the parties. Blunt agreed to convey a manor to Andrews, who was to render to him and his heirs a rent of £-, with clauses of entry, distress, &c. A fine was to be levied and was levied, and a common recovery, and Perkins, the recoveror, conveyed to Jlndrews the manor, and the rent to Blunt in tail,, remainder over. And among other objections taken was this, that the rents were to have been in fee, and were made in tail with remainder to'right heirs in fee; yet, inasmuch as the seisin in Perkins was only for an instant; and was but an instrument to carry into effect the intention of the parlies, this was held immaterial. The court say the fine is levied of the land, but some variance in the quantity of acres comprised in the fine, or the fine is levied to one of the parties who grantelh and rendereth the land, so as there-is variance between the covenant an.d the fine in number and in person, and yet God defend, but that this fine shall be averred to be to the use of the indenture, &c., and that was the case of an absolute sale of the land for money and a rent. How much more reasonable is it that in ease of a gift of land, and in which a trustee is raised only for a special purpose, and is trustee but for an instant, thaffthe whole shall be-considered as the act of those who had the whole estate, and that their manifest intention shall not be thwarted or prevented on technical rules, by those who had and those who have no right, except from the gift of the grantor. Mrs. Thompson had the power to give, it to one of them, or to a stranger. She has exercised that power fo'r the benefit of all, though giving unequal portions, and with the portions given each must be contented.
I forbear to enter upon a subject much-discussed in this cause, and which is of importance in this state; that is, whether the word heirs means an individual person where there are several in the same situation, or means all who will inherit if the owner in' fee simple dies intestate: it is strange that this evercould have been a question in this state since 1683, and stranger that it is still one; but, as the *116 point does not arise on the view of the case here taken, and as I may possibly consider this matter differently from others and cer-' tainly different from some who have gone before me, and whom I respect most highly, I shall leave it, until some case .requires an opinion on the subject. , ,
Judgment reversed.