[PHILADELPHIA, FEBRUARY 18, 1837.]

## HALLOWELL and Others *against* PHIPPS and Others.

### CASE STATED.

1. A testator devised certain real estate to his daughter A. in fee, and other parts of his real estate to his other children in fee. B., one of the children, died after the making of the will, leaving two infant children. Seven days after the death of B., the testator made a codicil to his will, as follows : " In the case of the death of any of my *heirs* under age without issue, their portion to be equally divided amongst the rest of my *children*." After the death of the testator, A. died under age, and without issue : *Held*, 1st, That the children of B. did not take any part of the share of A. 2nd, That the devisees under the codicil took a fee simple in A.'s portion.

2. Under a devise or bequest to *children, grandchildren* and other remote issue are excluded, unless a contrary intent be apparent in the will.

An action was brought in this court to the present term, by William S. Hallowell, Elizabeth Hallowell and William R. Hallowell, minors, suing by their guardian William S. Hallowell, against Stephen Phipps, Charles Phipps, Robinson Phipps, Deborah Phipps and Sarah Phipps; and a case was stated for the opinion of the court, as follows :

" Thomas Phipps, being in his lifetime duly seized of divers parcels of real estate, by his last will and testament dated the 30th of March, 1832, devised various portions thereof to his several children, to hold to them respectively in severalty; and, *inter alia*, the premises in the declaration described, to his daughter Frances Phipps in fee simple.

By codicil dated the 15th of July, 1832, the testator declared that in case of the death of any of his heirs, under age and without issue, their portion should be equally divided amongst the rest of his children.

Thomas Phipps died on the 17th of July, 1832, leaving the following children, viz., Stephen, Thomas, Charles, Joseph, Amy since intermarried with W. S. Hallowell, all of full age, and Deborah, Robinson, Sarah and Frances, minors—and two grandchildren, Elizabeth S. and William R. Hallowell, the children of Mary P. his daughter, who was the wife of W. S. Hallowell.

The said Mary P. Hallowell died after the execution of the will, and seven days before the execution of the codicil thereto, viz. on the 10th day of July, 1832; and her death was known to Thomas Phipps before his codicil was made.

(Hallowell v. Phipps.)

Frances Phipps died on the third of June, 1835, under age, unmarried, and without issue, leaving the above named Stephen, Charles, Robinson, Amy, Deborah, and Sarah, her brothers and sisters, and the said Elizabeth S. and William R. Hallowell, her nephew and niece, her surviving. Her brothers Thomas and Joseph Phipps, had died in February, 1834.

The question for the consideration of the court is, whether the said Elizabeth S. and William R. Hallowell, take any and what estate in the premises, under the said will and codicil. If the court should be of opinion that they take the same estate that their mother would have taken if alive, then judgment to be entered for the plaintiffs and defendants, according to the respective parts and purparts set forth in the declaration.

If the court are of opinion that the said Elizabeth S. and William R. Hallowell have no interest in the premises, then judgment to be entered in favour of William S. Hallowell and Amy his wife in right of said Amy; and in favour of each of the defendants that they shall respectively take one-sixth part of the premises, and that a writ of partition issue accordingly; and that the said plaintiffs, Elizabeth S. and William R. Hallowell, shall take nothing.—The judgment of the court not to be affected by the form of the pleadings."

The will and codicil referred to in the foregoing case, were as follows.

" Be it remembered, that I Thomas Phipps, of the city of Philadelphia, do make and publish this my last will and testament, in manner following; that is to say,—

Item.   I give and bequeath unto my daughter Amy, my house and lot in Eighth street in which I reside; together with all my household goods and kitchen furniture therein contained, together with the insurance thereon, to her heirs and assigns forever.

Item.   I give unto my son Stephen, in addition to what I advanced him to prefer him in business—the amount advanced him was three thousand dollars—I likewise give and bequeath him my house and lot in Shippen street near Front street.   I further give him his note I hold for thirteen hundred dollars, together with a note for five hundred dollars, due me from the board of health; likewise a mortgage of twenty-two hundred dollars on a house and lot in Race street, at the corner of the passage to Cherry street meeting.   The house and lot in Shippen street, I give to him his heirs and assigns forever. I likewise give unto him a claim of one thousand dollars on lot corner of Arch and Third.

Item.   I give to my daughter, Mary Hallowell, the wife of William Hallowell, my three houses, commencing at the corner of Coomb's alley and Second street, adjoining each other, to her and to her heirs forever, subject to the payment of two thousand dollars to

(Hallowell *v.* Phipps.)

my daughter Sarah—likewise give her all the insurance thereon made.

Item. I give to my sons Thomas and Charles Phipps, the sum I advanced them some time past, to prefer them in business—say seven thousand dollars, and the house and lot they now occupy, the corner of Arch and Third streets, to them and their heirs and assigns forever, subject to the payment of one thousand dollars to their brother Stephen Phipps.

Item. I give unto my son Joseph Phipps, a mortgage I hold on Israel Howell's property, for six thousand dollars; likewise a loan due from Cherry street meeting, it being money I lent them—say three thousand dollars.

Item. I give unto my son Robinson Phipps, bonds and mortgages I hold on the property formerly Grace Hastings, deceased, corner of Second and Market street, for five thousand three hundred and thirty-three dollars thirty-three cents, and a mortgage for one thousand dollars, on land belonging to Joseph Walton, and cash twenty-six hundred and sixty-seven dollars.

Item. I give unto my daughter Frances Phipps, my house in Arch below Fourth, to her heirs and assigns forever; likewise a mortgage I hold on John Wall's property for two thousand dollars; likewise a mortgage I hold on property near Chester, formerly belonging to Philip Stimmel for two thousand dollars.

Item. I give to my daughter Debby Phipps, my *two story* brick house and lot in Shreves' alley, running back to church property, to her heirs and assigns forever. I give to her an obligation due from directors of the poor for four thousand dollars; likewise four thousand dollars due me from the City of Philadelphia.

Item. I give unto my daughter Sarah a certificate of a loan to the Lehigh Coal company for three thousand and one hundred and twenty five dollars; and a certificate of the Spring Garden stock for three thousand dollars; and a lien *of two thousand* dollars on the property the corner of Coomb's alley and Second steeet, left my daughter Mary, subject to the payment of two thousand dollars; likewise cash to the amount of eight hundred and seventy-five dollars.

I nominate and appoint my daughter Amy, my sons Stephen Phipps, Thomas Phipps, Charles Phipps and Joseph Phipps my executrix and executors, to carry this my will into full effect.

I likewise nominate them guardians of my children under age, at the same time requesting that Amy shall have the personal care of them all, knowing that her desire is to bring them up in the fear of the Lord.

3 mo. 30th, 1832."

" In the case of the death of any of my heirs under age without issue, their portion to be equally divided amongst the rest of my children.

7 mo. 15th, 1832."

(Hallowell *v.* Phipps.)

The case was submitted on written arguments by Mr. *Price*, for the plaintiffs, and Mr. *M'Call* and Mr. *Scott* for the defendants.

For the *plaintiffs* it was contended,

1. That by the words of the codicil the testator intended that his *grand-children*, as well as his children, should share in the portion of a deceased child.

Upon this point were cited, *Thompson v. M'Clenachan,* (17 *Serg. & Rawle,* 15.) *Bennett v. Morris,* (5 *Rawle,* 17;) 3 *Peere Wms.* 295. *Dickinson v. Lee,* (4 *Watts,* 82.) *Parke v. Pemberton,* (5 *Binn.* 606;) *Ambler,* 603. *Wythe v. Thurlston,* (*Ambler,* 505, 681; 1 *Ves.* 196.) *Cooke v. Cooke,* (2 *Vernon,* 545.) *Davenport v. Hanbury,* (3 *Ves.* 257.) *Freeman v. Paisley,* (3 *Ves.* 421; 4 *Ves.* 437.) 1 *Roper on Legacies,* 70, &c. *Smith's case,* (2 *Dessauss. Rep.* 123, note.) 2 *Yeates,* 414; 8 *Term Rep.* 582; 2 *Barn. & Ald.* 448; 2 *Peere Wms.* 383; 3 *Bro. Ch. Rep.* 74, 367; 8 *Ves.* 604; 10 *Ves.* 166; 13 *Ves.* 340.

2. That a fee in the real estate did not pass to the devisees under the codicil.

To which were cited *Ram on Wills,* 96, 140. *Pettywood v. Cooke,* (*Cro. Eliz.* 52.) *Hawkin's case,* (2 *Leon,* 129, 193.) *Woodward v. Glassbrook,* (2 *Vernon,* 388.) *Cowper,* 657; *Clayton v. Clayton,* (3 *Binn.* 476.) *Steele v. Thompson,* (14 *Serg. & Rawle,* 89.) *Burr v. Sim,* (1 *Wharton's Rep.* 252.)

For the *defendants* it was argued,

1. That the children of the testator took a fee under the ulterior limitation in the codicil.

*Hauer v. Sheets,* (2 *Binn,* 532; S. C. 3 *Serg. & Rawle,* 487, note.) *Pills v. Brown,* (*Cro. Jac.* 590.) *Holmes v. Holmes,* (5 *Binn.* 552.) *Welsh v. Elliot,* (13 *Serg. & Rawle,* 206.) *Fearne,* 396. *Morrison v. Semple,* (6 *Binn.* 97.) *Powell on Devises,* by *Jarman,* vol. 2, ch. 22, p. 410, &c. *Neide v. Neide,* (4 *Rawle,* 75.) *Caskey v. Brewer,* (17 *Serg. & Rawle,* 441.) 2 *Preston on Estates,* ch. 6. *Bailis v. Sale,* (2 *Ves.* 48.) *Cas. Temp. Talbot,* 284, Id. 151. *Fletcher v. Smeton,* (2 *Term Rep.* 656.) *Gretton v. Haywood,* (6 *Term Rep.* 94.) *Ridout v. Payne,* (3 *Atk.* 486.) *Hogan v. Jackson,* (*Cowper,* 299.) *Norton v. Ladd,* (1 *Lutw.* 762.) *Hodgkinson v. Star,* (1 *Ld. Raym.* 187.) *Wall v. Langlands,* (14 *East,* 370.) *Doe v. Lainchbury,* (11 *East,* 290.) *Doe v. Tofield,* (11 *East,* 246.) *Doe v. Patterson,* (10 *East,* 221.) 1 *Bro. Ch. Ca.* 437. 3 *Bro. Ch. Ca.* 347. *Cowper* 299.

2. That the children of Mary P. Hallowell were not entitled to any share in the portion of Frances Phipps.

Upon which point were cited the following cases. *Crooke v. Brooking,* (2 *Vern.* 106.) *Hussey v. Dillon,* (*Ambler,* 603.) *Boyle v. Hamilton,* (4 *Ves.* 437.) 2 *Powell on Dev.* 298. *Jackson v. Staats,* (11 *Johns.* 350.) *Reeves v. Brymere,* (4 *Ves.* 697.) *Radcliffe*

v. *Buckley,* (10 *Ves.* 195.)    *Earl of Orford* v. *Churchill,* (3 *Ves. &*
B. 59.)   *Dickinson* v. *Lee,* (4 *Watts,* 82.)   *Preston on Legacies,* 205.
*Wyth* v. *Blackman,* (1 *Ves.* 195.)   *Gale* v. *Bennet,* (*Ambler,* 681.)   10
*Ves.* 199.

The opinion of the Court was delivered by

Rogers, J.—This case presents two points, 1st. Whether grandchildren are included in the limitation to the children ; and secondly,
whether the limitation over, is of a life estate, or in fee simple.

Under a bequest to children, grandchildren and other remote issue
are excluded, unless it be the apparent intention of the testator, disclosed by his will, to provide for the children of a deceased child.
But such construction can only arise, from a clear intention or
necessary implication ; as where there are not other children than
grandchildren, or when the term ' children,' is further explained by a
limitation over, in default of issue.   The word ' children' does not
ordinarily, and properly speaking, comprehend grandchildren, or
issue generally.   Their being included in that term, is only permitted
in two cases, viz. from necessity, which occurs when the will would
remain inoperative, unless the sense of the word, ' children,' were
extended beyond its natural import ; and where the testator has
clearly shown by *other* words, that he did not intend to use the
term ' children,' in the proper actual meaning, but in a more extensive sense.   In *Reese* v. *Brymere,* (4 *Ves.* 698,) Lord Alvanly held,
that children may mean grandchildren, when there can be no other
construction, as in *Ratcliffe* v. *Buckley,* (10 *Ves.* 198 ;) and in the *Earl
of Orford* v. *Churchill,* there appears to have been adopted the same
opinion.   In the last case, Sir William Grant says, that he never
knew an instance where there were children, to answer the proper
description, that grandchildren were permitted to share along with
them, although where there is a total want of children, grandchildren have been let in under a liberal construction of the word ' children.'   *Ratcliff* v. *Buckley,* (10 *Ves.* 192.)   *Reeves* v. *Brymere,* (4 *Ves.*
692.)   *Crook* v. *Brashier,* (2 *Ves.* 107.)   *Roper on Legacies,* 70.
*Powel on Devises,* 297, and *Preston on Legacies.*   The authorities abundantly support the position above cited, which are also
recognised by the Supreme Court of this state, in *Dickinson* v. *Lee,* (4
*Watts,* 82).   It was there held, that when it is necessary to effectuate
a manifest intent, grandchildren may undoubtedly take by the designation of children, though that is by no means, the legal acceptation
of the word.   They are suffered to do so, principally, if not exclusively in two cases ; where the word is used, evidently as co-extensive with issue, which is a word of very general import, and where
there are no children literally, to answer the description, and the
grandchildren are let in, " *ut res magis valeat quam pereat.*"   Here,
as there is no pretence to say that the grandchildren must be let in

(Hallowell v. Phipps.)

on the ground of necessity, as there are children to answer the description, the plaintiffs must support their claim, by showing that it was the clear, manifest intention of the testator, to use the term, not in its limited, but in its more extended sense. The words of the will on which the question arises, are "in case of the death of any of my heirs, under age without issue, their portion to be equally divided among the rest of my children." The question turns on the point, whether the import of the word 'heirs,' is restrained by that of ' children,' or the import of the word ' children,' is to be enlarged by that of ' heirs.' And we are of opinion that the latter clause of the codicil, restricts the signification of the term ' heirs;' and this we think the most natural construction, and most in accordance with the authorities. A person usually looks to his immediate, rather than his remote descendants, and particularly where those who are in a remote degree of consanguinity, are not under his peculiar care, but enjoy the protection of their own natural guardians or parents. The state of the testator's own family called for his special solicitude and anxious attention. It consisted of five minor children, and four of full age, in addition to which the testator had two grandchildren, the present plaintiffs, children of a daughter recently deceased, but who resided with their surviving parent. And accordingly we find, that in the concluding clause of his will, he appoints guardians for his children under age, and recommends them to his daughter Amy, for religious instruction. It is plain, that in the term 'children,' he did not intend to include grandchildren, by appointing guardians over children, whose parents were alive, and of course did not need the fostering care which was necessary in the case of his own minor children. It is said that the testator at the time he made the codicil to his will was aware of the death of his daughter, and that under the term ' heirs,' he meant to include them who would take under the intestate laws. Now, although the word ' heirs' in Pennsylvania includes all who would take by descent, (M'Clenachan v. Thompson, 17 Serg. & Rawle, 110,) and would of course comprehend grandchildren whose parent was deceased, yet I do not think this such a clear manifestation of intention, as to alter or control the construction which we must otherwise give to the other terms of the will. The word heirs, may, and often is construed to mean children, in order to effectuate the intention of the testator; and I am inclined to believe that the testator had in view the devisees enumerated in his will, and that his sole intention was to provide for the contingency of any of his minor children dying without issue under age, in which event he directs their portion to be divided among the rest of his children. The cause is by means clear of difficulty, but this is the most natural construction, and does less violence to the words, apparent intention, and rules of construction which have been so repeatedly settled. If we are at liberty to conjecture the reasons which operated in his mind, we may suppose that he was aware that the children of his

(Hallowell *v.* Phipps.)

deceased daughter, would take the share of their mother, under the act of the 19th of March, 1810, and this he may have supposed would be an ample share of his estate; that there were two of them, with the chance of survivorship between themselves; that they of course, could have no cause of complaint in this disposition, as they would form a class by themselves, and that in case of the death of either, their portion would go to the survivor, in exclusion of the uncle and aunts, the children of the testator. But that the word, children, is used in its ordinary legal acceptation, and that heirs and children, in the view of the testator, are synonymous terms, would also appear from these considerations. "In case of the death of any of my heirs under age, without issue, their portion to be equally divided among the rest of my children." The latter clause explains the former, and indicates the meaning attached to the term 'heirs' by the testator. Where an unlettered person speaks of his heirs, he ordinarily means his children, at least the term is frequently used in that sense; and accordingly as has been before said, to effectuate the intention of the testator, the term 'heirs' has been frequently held to mean children. The property is to be divided among the rest of his children, not among the rest of his issue, or the rest of his heirs, and no reason has been assigned for this change of phraseology, when he designates the persons who are to take, on the happening of the contingency. He would seem rather to have had in view his devisees, all of whom are named in his will, and that upon the contingency of the death of any of those under age, their portion should be limited over to such of his immediate descendants or children, who might then survive. The attention of the testator was called to the situation of his family, by the death of his daughter. He had five children in their minority, and four of full age. It was extremely probable in the natural course of things, that some of his minor children would die, before attaining the age of twenty-one, without issue. The testator taking this into consideration, provides in case of such a contingency, the portion of such child should be divided among the rest of his children, referring, as was most natural, to his immediate, and not his remote descendants.

It has been before stated, that this case depends upon the question, whether the import of the word 'heirs,' is restrained by that of 'children,' or the import of the word 'children' is to be enlarged by that of 'heirs.' The counsel for the plaintiffs have endeavoured to show that the word heirs, is of paramount influence; that the word 'rest' relates to heirs, and carries the same extended, comprehensive meaning, to the term children. But this construction we cannot adopt, as these terms obviously relate to 'children,' and show plainly, that by the term heirs, the testator intended to designate his devisees, or minor children. It is true, that when a testator uses the words children and issue indiscriminately, this has been held in several cases cited at the bar, such a manifestation of intention, as

(Hallowell *v.* Phipps.)

to include grandchildren. But in all those cases, the court construed children, to mean issue, on account of the general apparent intent. The testator indifferently used issue and children, which showed, as the court held, that he meant to use children in the same sense as issue. But in this case, we see no indication, but the contrary, to enlarge the legal signification of the term children, by the term used in the first part of the codicil.

The next question is, whether the limitation over is of a life estate, or in fee simple. The devise to Frances is a fee simple, and the words of the will are, " In case of the death of any of my heirs under age, without issue, their portion to be equally divided among the rest of my children." We think it very clear, that the testator intended that all he had devised to his minor children should go over, on the contingency of death, under age and without issue. Words which only describe the object devised, give no more than an estate for life ; but words which comprehend the *quantum* of the estate pass the fee. *Morrison* v. *Semple,* (6 *Binn.* 97.) The same principle is adopted and enforced in *Neide* v. *Neide,* (4 *Rawle,* 97.) The ' portion,' viz. the share, fortune, or estate of Frances was a fee simple in the real estate, and an interest in her mortgages of two thousand dollars, and this in case of the happening of a certain contingency, he directs should be divided among the rest of his children. No technical words are required to create a fee simple. Any expressions which indicate the intention to pass the whole interest is sufficient; and we have no doubt that under the term, ' portion,' the whole estate passed.

Judgment for the defendants.